### James L. Edson et al. v. Samuel G. M. Gates and William L. Fay.

*Rights of assignees of contracts—Partnership—Constructive parties to contract—Recoupment of claims under contract—Log-running.*

Assignees of a contract take it subject to all the rights and equities existing between the original parties.

A joint and equal interest in an enterprise does not make the holder a partner.

Two firms orally agreed to buy and lumber certain lands, one to furnish cash and the other labor. The former, without the latter's knowledge, took the land contract in their own name, while the latter acted under their oral agreement in the belief that they were partners to the contract. *Held*, that on a settlement of mutual claims they should be treated as if they were such parties, and that their rights as such would be enforceable in equity.

Parties jointly interested with others in the purchase and lumbering of lands, sold to the others their joint interest before the undertaking

was completed, and the latter agreed to pay them certain sums at fixed times, provided these sums did not exceed the investment made by the vendors in the first purchase, the amount of which was unknown at the time of the sale. *Held,* in an action by the vendors against the purchasers, that the latter were entitled to retain what they had paid beyond their own proportion, and also what the vendors would have been liable for in the joint dealings of the two with third parties, and the purchasers continued liable for after the dissolution of their relations.

There can be no presumption that a party will hesitate in the prompt performance of a legal duty.

The cost of running the logs of outsiders which have become mingled with a drive cannot be charged against the owners of the logs constituting the original drive; the drivers must look to the owners of the intermingled logs to satisfy their claim therefor.

Error to Bay.   Submitted June 18.   Decided October 6.

Assumpsit.   Plaintiffs bring error.   Affirmed.

*Wheeler & McKnight* and *Hatch & Cooley* for plaintiffs in error.   The assignee of a chose in action is not authorized to sue upon it in his own name unless the claim arose before notice of assignment and accrued prior to the action : *Martin v. Kuntzmuller* 37 N. Y. 396 ; *Houghton v. Houghton* 37 Me. 74 ; *Kull v. Thompson* 38 Mich. 685 ; *Weaver v. Rogers* 44 N. H. 112 ; *Henry v. Butler* 32 Conn. 140 ; *Ryan v. Barger* 16 Ill. 28 ; *Robinson v. Sufford* 57 Me. 163 ; *Houston v. Fellows* 27 Vt. 634 ; the contract in this case constituted the parties thereto partners : 3 Kent's Com. ch. 43 (3) ; 1 Coll. Part., § 2 ; *Pattison v. Blanchard* 5 N. Y. 189 ; *Champion v. Bostwick* 18 Wend. 175 ; *Green v. Beesley* 2 Bing. N. C. 108.

*Holmes, Collins & Stoddard* and *Benton Hanchett* for defendants in error.   An assignee of a contract takes it subject to existing equities in favor of the other party : *Bush v. Lathrop* 22 N. Y. 535 ; the right of recoupment is not confined to damages arising before action, but may include anything for which a cross-action would lie at the time of pleading : *Platt v. Brand* 26 Mich. 173.

MARSTON, C. J. The questions raised in this case must be determined principally on a construction of the written agreements in the light of what preceded and what was done under them. The referee found that in the summer of 1876 the assignees of the plaintiffs, Amos and Gilbert Johnson, were copartners under the firm name of Johnson Bros.; that defendants were partners under the firm name of Gates & Fay; that in the summer of 1876 these two firms agreed to purchase a certain lot of pine lands then owned by Evans, Kilmaster & Co., and that Gates & Fay should negotiate such purchase; that, in the event of such purchase being made, Johnson Bros. and Gates & Fay should jointly cut and lumber the pine thereon, and should be joint owners of the logs; that Gates & Fay should advance the money necessary to make the payments on the lands, and cut, run and drive the logs to a place of manufacture or market; that Johnsons should advance certain materials and supplies to aid in the cutting; that the sum of $318.03, owing by Gates & Fay to Amos Johnson, should be transferred to the joint account of both firms and to the credit of the Johnsons. Each firm was to furnish certain teams, and the Johnsons were to personally attend to the lumbering, and their services should offset the use of the means furnished by Gates & Fay in excess of the amount furnished by the Johnsons; and that Gates & Fay should be reimbursed for the principal of such excess out of the proceeds of the business.

Gates & Fay did negotiate a purchase, and took the contract in their firm name, and Johnson Bros. did not know that their names were not in the contract until April, 1877, but until then were of the belief that they were parties thereto, and made expenditures and performed labor upon the lands in that belief. The consideration set forth in the contract for the lands was $8500. The first payment was $2125, for which Gates & Fay gave their notes at two and four months, which were paid. The balance was to be paid in one, two and three years from the date of the contract, July 31st, 1876, with interest at 7 per cent. on all sums unpaid. The vendees were restricted in the cutting of the

timber to not exceeding one-third in any one year, but might cut more on making a proportionate part of the next payment, equal to the timber cut. The contract provided how the logs should be marked, and the vendors were to have a lien thereon for payments not made when due.

In the fall of 1876 Johnson Bros. commenced lumbering upon these lands, a large quantity of logs were cut, marked and banked, and in April, 1877, Johnson Bros. commenced the work of running and driving these logs. All this was done with the full knowledge and consent of Gates & Fay, in pursuance of the oral agreement first referred to, each furnishing teams, etc., as agreed. The amount paid for such purposes need not be referred to in this statement.

There were more logs thus cut than the parties had a right to under the contract with Evans, Kilmaster & Co., without making farther payment, but the excess thus cut does not seem to have been accurately known until the summer or fall of 1877.

There were also other logs, which the Johnsons had purchased on joint account of themselves and Gates & Fay, banked with these, also marked J. G. F., the same as were those cut upon the joint lands.

On the 5th of April, 1877, Johnson Bros. by a written agreement, sold to Gates & Fay, and agreed to deliver in the main stream of the Chippewa river, "their undivided one-half interest in all the logs put in by them in said stream and its tributaries marked J. G. F., supposed to be 3,500,000 feet, more or less, according to the scale made by Ira Elliott on the bank of the said stream, said scale to be basis of settlement of this contract." The terms of payment were $1000 June 1st, 1877.; $2500 September 1st, 1877; provided that these two amounts shall not exceed the investment made by the said Johnsons in the joint purchase, to them at this time unkown; the balance December 1st, 1877." It was also provided that if the boom scale showed a shortage of a certain quantity from Elliott's, then a different price per thousand was to be paid for the logs. The payments of $1000 and $2500 were made.

On November 19th, 1877, Gates & Fay agreed to pay Evans, Kilmaster & Co. $2000 on account of the excess of logs cut. In March, 1878, they accepted a draft for this amount, and paid it in May following. The Johnsons, October 19th, 1877, assigned their interest in the contract to plaintiffs, and this suit was commenced December 24th, 1877; and the commencement of suit was the first notice Gates & Fay had of the assignment.

This case must be disposed of in the same manner as though no assignment had been made, and Johnson Bros. had brought this action. The assignees take it subject to all the rights and equities existing between the original parties. The case must also be treated as though Johnson Bros. were in law and fact, as in equity they were, parties to the contract made between Gates & Fay and Evans, Kilmaster & Co. Under the facts found by the referee, there could be no question of doubt as to their rights, or the enforcement thereof, in a court of equity. The original agreement, the subsequent one for the sale of the logs, and the acts of the parties under the Evans, Kilmaster & Co. contract, in lumbering pursuant to the original agreement, all recognize the right of Johnson Bros.

On turning to the original, the oral agreement made in the summer of 1876 between Johnson Bros. and Gates & Fay, which was the basis of all that followed, and under which the lands were purchased and lumbered, we find the land was to be purchased for the two firms; that Gates & Fay were to advance money to make the payments, and cut and run the timber to market; that the services of the Johnsons in lumbering were to offset the interest which Gates & Fay otherwise would have been entitled to on such advances, over and above their share, and that Gates & Fay " *should be reimbursed for the principal of such excess out of the proceeds of the business.*" There is nothing in the finding of the referee which tends to show that this agreement in this respect was ever changed, unless it may be by the clause in the contract of the sale of Johnson Bros'. interest in the logs to Gates &

Fay, when certain payments were to be made provided they did "*not exceed the investment made by the said Johnsons in the joint purchase, to them at this time unknown.*" It is not claimed by either party that this clause does change the original agreement, while defendants claim it to be in accordance therewith. Had Johnson Bros. and Gates & Fay united on the 5th day of April, 1877, in selling all the logs then cut upon the lands jointly purchased, we think there could be no doubt but that Gates & Fay, out of the proceeds of such sale, would have been entitled to be re-imbursed for the excess of principal paid by them, or for which they were then legally obligated under their contract with Evans, Kilmaster & Co. for any excess of logs then cut.

The parties evidently intended annual cuttings, payments and settlements. If, instead of both parties uniting in a sale to third parties, Johnson Bros. sold their interest to Gates & Fay, they, Johnson Bros. had thereafter no farther interest in such logs. And if Gates & Fay were to be re-imbursed out of the proceeds, it could only, under such a state of facts, be out of the contract price they had agreed to pay for such logs. This evidently was what the parties understood when they provided that the $1000 payment of June 1st and the $2500 of September should be made, provided such amounts did not exceed the investment made by the Johnsons in the joint purchase. The wording of this proviso is somewhat peculiar, but it could only mean that those two payments should not be made unless that amount would be going to Johnson Bros. after deducting from the proceeds of their interest in the logs sold the amount advanced for them by Gates & Fay on the contracts previously made. And in this view it would make no difference whether Gates & Fay had, at the time this action was commenced, made the payments or not, if they previously were under legal obligation to pay the same, to protect their title to the logs purchased from Johnson Bros. This payment was to apply on those logs. It was because of an excess of logs cut, which formed a part of those sold, it had to be paid, and in an action brought to recover their share of the proceeds of any lot of logs, all pay-

ments made up to the time of the trial, on account thereof, should be taken into consideration. Had these logs been manufactured and sold on joint account, in an action brought to cover their share of the proceeds, sums paid by defendants after suit brought, because of defects or deficiency in the quantity of lumber sold, would enter into the computation. To test this farther, suppose Johnson Bros. and Gates & Fay had, during the first winter, stripped the lands of the timber thereon, and Johnson Bros. had thereupon sold their undivided half of the logs to Gates & Fay, who, under their contract, were obliged to pay Evans, Kilmaster & Co., and for the payment of which the logs thus cut and sold were subject to seizure by Evans, Kilmaster & Co. Could Johnson Bros. sue for and recover their contract price without deducting therefrom the sum paid subsequent to the commencement of the action for the release of such logs? We think not. All sums paid by Gates & Fay over and above their share, they would be legally and equitably entitled to have from Johnson Bros., and such sums they could retain in their hands, out of the proceeds of any of the logs cut upon such lands.

It would not be necessary, and would be but an idle ceremony, for Gates & Fay to pay over to Johnson Bros. the price of the logs purchased, and for the latter to then pay the money back as due Gates & Fay under a part of the same transaction. It would clearly have been the legal duty of Johnson Bros. to pay back money so received, and we cannot assume that they would have hesitated in the prompt performance of their duty. *Connecticut etc. Ins. Co. v. State Treasurer* 31 Mich. 6.

The referee, we think, was right in taking an account of the entire transaction thus far between these parties, and to credit Gates & Fay with all sums paid by them on the land or lumbering contracts over and above their proportion.

As to the expense of driving the logs, the finding of the referee is that third parties put into the river a large quantity of logs which became mingled with the J. G. F. logs, and were run and driven down the stream by the Johnsons with the J. G. F. logs, and that the logs of third parties constituted

about six-thirteenths of the whole drive.    Six-thirteenths of
the entire expense of the drive was, therefore, rejected by
the referee.    This was correct.    There is nothing in the
finding that could in any way justify a charge against Gates
& Fay of any portion of the expense of driving third parties'
logs.    The Johnsons must look to the owners of such logs
for their claim.    The referee does not find that Johnson
Bros. and Gates & Fay were copartners in the purchase and
lumbering of these lands, nor does such a legal conclusion
follow from the facts found.    The fact that they were jointly
and equally interested would not make them partners.    We
need not, therefore, attempt to determine the respective rights
and remedies of copartners in such a case.

As we discover no error the judgment must be affirmed
with costs.

The other Justices concurred