### STEPHENS v. CORYELL.

1. REFORMATION OF INSTRUMENTS — VENDOR AND PURCHASER — LEASE—CONTRACTS.

> Where complainant, in a suit to reform a land contract so as to effect a lease of the farm conveyed, with an option to purchase, offered testimony tending to show that she executed the writing without examining it, supposing that it conformed to the oral agreement of the parties for a tenancy and option to buy, that complainant was unfamiliar with business matters, the instrument ambiguous, and containing provisions inconsistent with the purchaser's claim that it expressed the true agreement, the court rightly entered a decree interpreting the agreement in accordance with complainant's prayer for relief, as amended.

2. SAME — ASSIGNMENT — EQUITIES OF PURCHASER IN GOOD FAITH —LAND CONTRACTS.

> As against an assignee of the vendee's rights transferred by an assignment and quitclaim deed, the complainant was entitled to enforce equities to which the contract was subject in the hands of the assignor.

Appeal from Saginaw; Kendrick, J. Submitted January 26, 1912. (Docket No. 128.) Decided March 12, 1912.

Bill by Mary A. Stephens against Myron E. Coryell and Guy Wickham for reformation of a written instrument. From a decree for complainant, defendants appeal. Affirmed.

*James P. Devereaux*, for appellants.

*A. Elwood Snow*, for appellee.

Stone, J. The complainant filed her bill of complaint to correct and reform a certain contract, so as to truly represent and set forth the true contract and understanding between the parties, thereby changing the same from a land contract to a lease with the option of purchase, and providing for a yearly rental of $250.

Complainant states that the contract actually made with defendant Coryell was for the lease and purchase of a certain farm, upon the following terms and conditions: That she leased said real estate to said defendant for a period of three years at an annual rental of $250, with the privilege and option to said defendant to purchase the same at any time within said term of three years upon his making payment to her in the sum of $4,500, and with the further proviso that if a purchase and sale were not effected within said period of three years, another lease and option were to be executed for a like period, and with the same rental and option, and with a further proviso that said defendant was to break up a stump lot of about 19 acres, and set out an orchard of about 100 fruit trees in the spring of 1910, and set out 6 shade trees in the driveway the same spring.

The complainant claims that the paper signed by the parties had been prepared by said defendant, and was not in conformity with the mutual understanding and agreement of the parties, but is a fraud on complainant, practiced by said defendant; that at the time she signed the said paper she was attending her mother, who was sick; and that when said paper was presented to her by said de-

fendant she supposed that the same had been prepared according to the terms of their oral agreement. The answer of defendant Coryell denies these claims of complainant, and asserts that the written contract was in exact accord with the understanding and agreement of the parties.

The contract actually signed by the parties is as follows:

"This contract, made this 30th day of April in the year one thousand nine hundred and nine, between Mrs. M. A. Van Inwagen, of the village of Chesaning, Saginaw county, Michigan, party of the first part, and Myron E. Coryell, of the same place, party of the second part, witnesseth: That the said party of the first part, in consideration of the sum of forty-five hundred dollars, to be to her duly paid as hereinafter specified, hereby agrees to sell and convey to the said party of the second part, all the following described land, situated in the township of Chesaning, county of Saginaw, State of Michigan, to wit: The east half of the east half of the northwest quarter and the west half of the west half of the northeast quarter, section seventeen (17) town nine (9) north, range three (3) east, containing 80 acres of land more or less, for the said sum of forty-five hundred dollars, which the said party of the second part hereby agrees to pay to the said party of the first part, as follows: $250 January 1, 1910; $250 January 1, 1911; and $250 January 1, 1912. At the end of three years from date hereof a new contract is to be executed between the parties hereto, or deed to be given second party on payment of purchase price. Second party to break up stump lot of about 19 acres and set out an orchard of about 100 fruit trees in the spring of 1910. No standing timber to be cut by either party. Also set out six shade trees in driveway next spring. Said party of the first part also agrees to pay in due season all taxes and assessments, extraordinary as well as ordinary, that shall be taxed or assessed on said land, including the taxes thereon for the years 1909, 1910 and 1911. It is agreed by the parties hereto, that the said party of the first part, on receiving payment in full of the said principal and interest at the times and in the manner above mentioned, and of all other sums chargeable in her favor hereon, shall and will at her own proper cost and expense, execute and deliver to the said party of the second part, a good

and sufficient warranty deed of said above described land, free and clear of and from all liens and incumbrances, except such as may have accrued on said lands subsequent to the date hereof, by or through the acts or negligence of said party of the second part.   It is also agreed by the parties hereto, that said party of the second part shall have possession of said land under this contract on or before June 1st, 1909.   It is also agreed by the parties hereto, that if the said party of the second part shall fail to perform this contract, or any part of the same, the said party of the first part shall, immediately after such failure, have the right to declare this contract void, and to retain whatever may have been paid thereon, and all improvements that may have been made on said land, as stipulated damages for nonperformance of this contract, and may consider and treat said party of the second part as her tenant holding over without permission, and may take immediate possession of said land, and remove said party of the second part therefrom.   And it is agreed, that the stipulations herein contained are to apply to and bind the heirs, executors, administrators and assigns of the respective parties hereto.

"In witness whereof, the parties hereto have hereunto set their hands and seals, the day and year first above written.

"MARY A. VAN INWAGEN.   [Seal.]

"MYRON E. CORYELL.   [Seal.]

"Signed, sealed, and delivered in presence of

"CHAS. W. CHEENEY."

At the time this contract was signed, complainant bore the name of Mary A. Van Inwagen.

The defendant Guy Wickham purchased the interest of defendant Coryell in the said contract January 3, 1911, and took an assignment of the contract, and a quitclaim deed from Coryell for a stated consideration of $1,750, and he claims that he relied upon the written contract.

After the hearing, upon the petition of the complainant, the circuit judge, by order, permitted complainant to amend the prayer of her bill by adding the following words:

"That the said paper and contract may be construed and interpreted by this honorable court, and that this hon-

orable court place its construction and interpretation upon said paper and contract."

The testimony was taken in open court, and the circuit judge had the advantage of seeing and hearing all of the witnesses. Defendant Coryell went into possession of the premises and made the annual payments. Defendants claim that the receipts prepared by Coryell and given by complainant for the payments are evidence that the payments made were upon the purchase of the farm. Two of them are as follows:

"$50.00.
"CHESANING, May 10, 1909.
"Received from M. R. Coryell, fifty and no 100ths dollars, to apply on payment due Jan. 1, 1910.
"MARY A. VAN INWAGEN."

"$100.00.
"SAGINAW, MICH., Jan. 8, 1910.
"Received from M. E. Coryell, one hundred and no 100ths dollars, to apply on payment on farm due Jan. 1st, 1910.
"MRS. M. A. VAN INWAGEN."

We do not consider these receipts as at all controlling. From them it may as well be said that the payments were to apply on rent as on the purchase of the farm. Later, the complainant refused to sign receipts, unless they expressly stated that they were to apply on rent, and the conduct of Coryell in that connection is referred to by the circuit judge in his opinion.

It is further claimed by defendants that the fact that complainant took the contract to Coryell some days after it was signed and had it changed by adding the words "in the spring of 1910," referring to the breaking up of the stump lot, and the fact that she then read the contract, is strong evidence that she understood the terms and purport of the paper. There is much force, however, in the position of the circuit judge that the contract as written is ambiguous and uncertain, and it would not be strange if complainant did not comprehend its meaning.

In his testimony, defendant Coryell stated that when he first went to see complainant it was his intention to rent the farm, and that he at first told complainant that he could not think of buying it.    But he claims that during the interview he changed his mind and agreed to buy. Complainant denies that there was any agreement on her part to sell, except as stated in her bill.    The testimony of defendant Coryell is not very convincing, as will appear by the following on his cross-examination:

"*Q.* You had the privilege of renewing the contract at the end of three years?
"*A.* Yes.
"*Q.* For three years more?
"*A.* There was nothing specified.
"*Q.* What was the understanding?
"*A.* I asked for that privilege of *another lease* that at the end of three years I was to be given a new contract; but there was nothing said as to that, what the contract would be, for the reason, if I was not able at the end of three years to pay up what was due her, I had the privilege of having a new contract."

As to the main question in the case, whether the contract was for an absolute sale, or a lease with annual payments of rent with the privilege of purchase at $4,500, there was a sharp conflict in the evidence.    The contract, as drawn and signed, was a most peculiar and unusual one. It provided for no interest upon deferred payments.    At the end of three years, if deed was given, it was to be on payment of the entire purchase price.    It provided that complainant was to pay all taxes on the farm, and made explicit provision for certain improvements to be made by Coryell—things quite unusual in a contract of sale, but quite usual in a lease.    Really, the material controversy between the parties is whether the annual payments of $250 should be applied on the purchase price of the farm, or be considered as rent.

After a careful examination of the record, we are of the opinion that the circuit judge reached a correct conclusion.    He filed a written opinion which so clearly ex-

presses his views upon the material questions in the case that we insert it here. It is as follows:

"This conflict arises over a certain contract entered into between complainant Stephens and Coryell, dated the 30th day of April, 1909. The contract was concerning certain lands owned by complainant, described as follows: The E. ½ of the E. ½ of the N. W. ¼ and the W. ½ of the W. ½ of the N. E. ¼, section 17, town 9 N., range 3 E. The contract is in the nature of a land contract, drawn upon an ordinary land contract blank. The written part of said contract is somewhat uncertain in its terms, and in the light of ordinary business transactions it is somewhat difficult from its terms to determine just what was intended by the parties at the time the same was executed. The complainant claims that it was a contract in the nature of a lease of the lands in question to defendant Coryell, including a right to the said Coryell to purchase the same upon certain terms, and that the same was supposed to be executed for the purpose only of such lease and option. The defendants claim that the contract was an absolute sale of the property upon a land contract.

"The contract provides for a purchase price of $4,500.00, and provides for certain payments of $250 on the 1st day of January, in each of the years 1910, 1911, and 1912, or the three years succeeding the date of said contract. After the statement in said contract providing for the said three payments of $250 each, it states as follows:

"'At the end of the three years from date hereof a new contract to be executed between the parties hereto; or deed to be given to second party on payment of purchase price.'

"No provision is made for payment of interest, as all the printed matter in the contract concerning interest is stricken out, and erased. Certain other provisions are made, requiring Coryell to make certain improvements upon the lands, such as setting out fruit trees and other trees upon the lands. As to what the second contract referred to was to be in no way appears; but it is a fair presumption it was intended to continue the relation of the parties concerning the purchase of the land, by Coryell, as it states Coryell can have a deed of the premises by paying the purchase price mentioned. The contract further puts the burden of paying all taxes upon the com-

plainant. It appears that the contract was assigned January 3, 1911, by defendant Coryell to one Guy Wickham, the codefendant. The assignment was accomplished by written assignment of the contract, and by a quitclaim deed from Coryell and wife to Wickham. Defendants claim to rely wholly upon the written assignment of the contract, but the fact remains that Coryell and wife executed a quitclaim deed to Wickham, which was duly accepted and placed upon record in due form.

"A large amount of testimony was taken before the court, much of which pertained to the proper interpretation, construction, and determination of the true meaning of and determination of the intent of the parties to the contract. The complainant impressed the court as being of limited (business) experience and understanding in business affairs, and from the surrounding circumstances in connection with her testimony it is fully convinced that she understood that she was to receive the full sum of the purchase price named at the end of three years, in addition to the annual payments provided for in the contract, and from the understanding of the situation by the defendant Coryell I am convinced that he was fully aware of complainant's understanding in the premises. The defendants' solicitor placed much stress upon the wording of certain receipts given by the complainant for the portions of the annual payments, which specifically stated as follows, ' To apply on payment of farm.' Two such receipts for the first payment prepared by Coryell in his behalf were signed by the complainant; but subsequently, when her attention was called to the form of the receipts, she objected and refused to sign the same as not in accord with the contract. These later receipts were sent through the bank, with the drafts for the payments, under instructions to the bank to permit no changes in the form of the receipts. The fact that defendant Coryell was so particular to insist upon the form of his receipt and have the same particularly state that it was as payment upon the principal, before any question had been raised, somewhat impresses the court that he was well aware that a different construction from that which he now insists upon was quite possible, under the terms of the contract, as well as the understanding between himself and complainant at the time the same was being originally discussed and arranged, prior to the time the contract was prepared. It stands undisputed in the evidence that the

present value and price placed upon the land in question by the complainant was $4,500. The evidence by all parties who testified in the case upon that subject fully sustains the view that the present value placed upon the farm was $4,500. She had very recently, before she entered into this contract under consideration, been offered and had refused $4,000 in cash, which was by far more advantageous by many hundred dollars than this contract, if this interpretation contended for by defendant is to prevail.

" The fact that an additional contract was provided for negatives defendant's contention of the understanding claimed by him. The contract recites that at the termination of three years he can buy the same and receive a deed therefor from complainant by paying the purchase price. It does not recite that it shall be the *balance* of the purchase price. The fact that no interest was provided for, together with the fact that complainant should pay all taxes upon the property, * * * is quite conclusive that the annual payments and the improvements provided for were intended as and for the use of the property until such time as the sale should be perfected. The payments would fall far short of an amount sufficient to meet the taxes and the legal interest upon the sum which complainant had been offered in cash by other responsible parties for the property. I am convinced defendant Coryell was well advised of the situation, and well knew that the true meaning of the contract was as contended by the complainant.

" It is claimed by the defendants' counsel that, even should it appear that complainant is entitled to relief against defendant Coryell, she should not recover against defendant Wickham, for the reason ' that no confidential relations existed between these parties, and the complainant has no legal right to rely upon verbal statements and neglect to employ the means at hand (the written contract), by a careful reading of which complainant could have been fully informed.' This, perhaps, would be of greater force, were it not for the fact that the contract was uncertain in many of its terms, and can only be properly understood by the aid of evidence outside of the contract itself.

" It is also contended by defendants' counsel that complainant is entitled to no relief against defendant Wickham under the maxim or principle of law that, ' when one

of two innocent parties must suffer by the fault of a third, he shall sustain the loss who put it in the power of the third person to occasion it.' This rule does not apply in this case. This contract, by its terms, is not clear, and should have put the purchaser upon inquiry. The contract is nonnegotiable, and an assignment of it only transfers such rights as the grantor possessed, and is subject to all the equities existing between the original parties at or prior to the assignment. Defendant Wickham could have easily ascertained the true conditions between the original parties, and a prudent person would have done so. The assignee can always, by a limited amount of ordinary pains, ascertain what claim may exist in the premises in such cases, and due prudence would have enabled him to become fully informed in the matter.

"While in this State a vendee may assign his written contract of purchase, yet the assignee succeeds only to the rights of his vendor, and to no greater rights. Hence it will be inferred from the foregoing that the purchase price mentioned, as a sum to be paid at the end of three years, meant that the sum of $4,500 must be paid, or a satisfactory contract between the parties must then be made in the premises between the parties in interest; and such a decree is ordered in this case, in such manner interpreting, construing, and determining the proper meaning of said contract which, in the light of all the evidence in the case, will carry into effect the actual intent of the parties to the agreement under consideration, which the court finds was so claimed by the complainant. All instruments and agreements are to be so construed as to give effect to the whole, or as large a portion as possible, of the agreement or instrument under consideration, and in construing such an instrument it is proper, if two constructions are fairly possible, to adopt that one which equity would favor, which, in this case, is clearly in accord with the complainant's contention."

Referring to the rights of the defendant Wickham, it is only necessary to say that at most he was the purchaser of an equitable interest. The assignee of a contract of this nature takes it subject to all the rights and equities existing between the original parties. *Edson* v. *Gates,* 44 Mich. 253 (6 N. W. 645); *Storey* v. *Dutton,* 46 Mich. 539 (9 N. W. 844); *Howell* v. *Medler,* 41 Mich. 641 (2

N. W. 911); *Seligman* v. *Ten Eyck's Estate,* 49 Mich. 104 (13 N. W. 377); *Hooper* v. *Van Husan,* 105 Mich. 592 (63 N. W. 522); *Hamaker* v. *Coons,* 117 Ala. 603 (23 South. 655); 4 Cyc. pp. 14, 64, 79; 2 Boone on Real Property, §§ 259–374; *Parmly* v. *Buckley,* 103 Ill. 115.

The decree of the circuit court is affirmed, with costs to complainant. She will, however, recover her costs in this court only against the appellant.

MOORE, C. J., and STEERE, McALVAY, BROOKE, BLAIR, and OSTRANDER, JJ., concurred. BIRD, J., did not sit.