### KUCZEWSKI *v.* DE MAGNUSSUN.

DEEDS — No CONSTRUCTIVE FORGERY WHERE PAPERS WILLINGLY SIGNED WITH KNOWLEDGE OF THEIR IMPORT.

Where the vendors in a land contract, wishing to discount it, entered into negotiations with a purchaser, willingly signed the papers with full knowledge that they were passing their interest in the property conveyed, and accepted a seven-day note in payment, which was never paid, the buyer absconding after selling the premises to an innocent purchaser, there was no constructive forgery so as to render the deed void as to the innocent purchaser.

Appeal from Wayne; Gilbert (Parm C.), J., presiding.    Submitted January 4, 1928.    (Docket No. 39.) Decided April 3, 1928.

Deeds, 18 C. J. § 176.

Bill by Walter Kuczewski and another against Arthur De Magnussun, Samuel Sternberg, Henry W. Harmon, and Morris Epstein to set aside certain deeds on the ground of fraud.     From the decree rendered, plaintiffs and defendant Epstein appeal.     Reversed, and decree entered for defendant Epstein.

*Edmund M. Sloman (Everitt H. Wells,* of counsel), for plaintiffs.

*Joseph B. Beckenstein (John Sklar,* of counsel), for defendant Epstein.

*Robert J. Hanley,* for defendant Sternberg.

McDONALD, J.     This bill was filed to set aside two deeds, one from the plaintiffs to the defendant De Magnussun, and the other from De Magnussun to defendant Morris Epstein.     The plaintiffs were the owners of certain real estate in the city of Detroit, Michigan.     On August 19, 1925, they sold it on land contract to a Mr. Zygmont and wife.     Wishing to discount this contract in which they had an equity of about $2,700, they applied to defendant De Magnussun, who had advertised in the Detroit newspapers under the name of the American Discount Company that he would purchase land contracts at a low rate of discount.     A sale was agreed upon.     The plaintiffs furnished an abstract of title and a day was set for closing the deal.     At the time fixed, the plaintiffs went to De Magnussun's office, signed the necessary papers including a deed of the premises, and received from De Magnussun $25 in cash and his seven-day note of $1,947 for the balance.     The note was not paid when it became due.     In the meantime, De Magnussun sold the property to the defendant Morris Epstein and absconded.     When the plaintiffs learned that they would be unable to collect the note, they employed counsel who filed this bill charging fraud and conspiracy on

the part of De Magnussun, Morris Epstein, and Samuel Sternberg, the notary who took their acknowledgment to the deed, and praying that the assignment of the contract and their deed to De Magnussun and his deed to Epstein be set aside. De Magnussun was not served with process and no appearance was entered by or for him. On the hearing, the plaintiffs abandoned the theory of the bill, and claimed that their signatures to the deed were obtained by trickery on the part of De Magnussun and Sternberg; that therefore it was a forgery and was not a valid deed in the hands of Epstein. The circuit judge adopted this view of the case, and entered a decree for the plaintiffs except as to the defendant Sternberg. The defendant Epstein has appealed. The plaintiffs also have appealed from that provision of the decree denying their relief against Sternberg.

It has been held by this court that where one is tricked into signing a deed believing it to be some other instrument, such deed is a forgery and is invalid in the hands of any one. *Horvath* v. *National Mortgage Co.*, 238 Mich. 354, and cases therein cited.

Counsel are not in disagreement as to the law. The question is whether it is applicable to the facts as shown by the record. The plaintiffs went to the office of De Magnussun to sell their land contract. They knew that they were going to dispose of their entire interest in the property and they were willing to sign all of the necessary papers. The husband, Walter Kuczewski, had conducted the preliminary negotiations with De Magnussun and understood that they were not to be paid in full until a week after the papers were signed. His wife was not informed of this arrangement and expected that when the deal was closed they would be paid in cash. She testified:

"My husband didn't say anything to me about not getting his money for a week. He didn't tell me, because he was in such a hurry to come and get me,

and while we came right back he didn't have the chance to do there, he put it up to Mr. De Magnussun to tell me but he didn't."

She further testified that after the papers were signed—

"De Magnussun took out a check out of his pocket and he handed it to my husband and he says 'you indorse this,' and my husband put his name on and he says 'well,' he says, 'I guess I will give you cash, I got that much in my pocket,' and he did that. After he gave him the cash I thought it was quite funny; I says to my husband, 'what is the matter, is that all he is giving you, that $25?' And my husband says, he says, 'all right, we will get the receipt after while,' and I didn't understand it, because De Magnussun didn't tell me and my husband didn't tell that he didn't intend to give him all of the money down * * * so I kind of hesitated and I said to my husband, I says, 'no, that don't go that way.' I says to Mr. De Magnussun, I says, 'I want my papers back,' and he says 'what for, here is your note for the rest, the $1,500 you got coming,' and he says, 'I will take care of the papers, you don't have to take them back.' I says, 'well, look here, I didn't get the money for my property, and I want my papers back.' "

Both of the plaintiffs say that they did not know that they were signing a deed. It clearly appears, however, that they knew they were signing whatever papers were necessary to convey their entire interest in the property. Mr. Kuczewski testified:

"*Q.* Now, you knew you had to sign the papers when you sell your property?

"*A.* Yes, sir.

"*Q.* And that is what you wanted to do?

"*A.* That is what I wanted to do.

"*Q.* And the whole trouble with it is that De Magnussun didn't keep his promise to pay you a week later, isn't it?

"*A.* I don't think I signed that deed though.

"*Q.* No, but you did sign any paper that was necessary there?

"*A.* Yes."

When the plaintiffs signed the papers, they knew that they had conveyed their entire interest in the property to De Magnussun. That is why Catherine Kuczewski demanded that he return the papers when she learned that payment was to be deferred for a' week. She was not tricked into signing the papers. Her only complaint at the time was that they were not to get payment as she had expected. The plaintiffs' testimony does not make a case of constructive forgery. They signed the papers willingly with full knowledge that they were passing their interest in the property to De Magnussun. They trusted him as to the payment of the purchase price. They accepted a cash payment of $25 and his note for the balance payable seven days from date. Their unfortunate situation is due solely to the fact that De Magnussun was a swindler and did not fulfil his promise to pay. In view of these facts, the court is powerless to grant them relief against a *bona fide* purchaser who invested his money and obtained his deed from De Magnussun in reliance upon the public records of title. The defendant Morris Epstein was an innocent purchaser. His deed is valid. The defendant Sternberg ought not to have been brought into the case as a party defendant. He committed no wrong and, as to him, the court properly dismissed the bill.

As the decree of the circuit judge is not justified by the facts, it is reversed and a decree will be entered in this court in accordance with this opinion. The defendants Epstein and Sternberg will have costs.

NORTH, FELLOWS, WIEST, CLARK, and SHARPE, JJ., concurred.

The late Chief Justice FLANNIGAN did not sit.

The late Justice BIRD took no part in this decision.