CRUMRINE v. BERNSTEIN

1. VENDOR AND PURCHASER—RESCISSION—ASSIGNMENTS—FRAUD.

In suit to set aside assignment of land contract on ground of fraud, evidence *held*, to conclusively show that assignment was procured by fraud.

2. SAME—NOTICE—GOOD-FAITH PURCHASER.

An assignee of a land contract or other chose in action takes it subject to all equities and defenses existing while it was in the hands of the assignor.

3. SAME—TENDER—RESCISSION.

In suit to set aside assignment of land contract on ground of fraud, that plaintiffs had not tendered back what they received would not bar their right to relief, where assignee defaulted bail in criminal action and his present whereabouts are unknown, and especially where papers to be returned are of no practical value.

Appeal from Oakland; Gillespie (Glenn C.), J. Submitted October 25, 1929. (Docket No. 163, Calendar No. 34,574.) Decided January 24, 1930.

Bill by Frank Crumrine and another against Milton M. Bernstein, Rose Bernstein, Albert Knuckles, and James I. Ellmann to set aside two assignments of a land contract on the ground of fraud. Bill dismissed as to Ellmann. From a decree for plaintiffs, defendants Bernstein appeal. Affirmed.

*Philip Elliott* (*Frank Stipes*, of counsel), for plaintiffs.

*James I. Ellmann, Henry P. Rosin,* and *Keeling & Bogue,* for defendants Bernstein.

McDONALD, J. This is an appeal by defendants Milton M. Bernstein and Rose Bernstein from a decree setting aside two assignments of a land contract, one from the plaintiffs to the defendant Knuckles, and the other from Knuckles to the Bernsteins. The bill was dismissed as to defendant James I. Ellmann.

The plaintiffs were vendees in two land contracts for the purchase of ten acres of land north of Pontiac, Michigan. On October 6, 1926, through defendant Knuckles, a Detroit real estate dealer, they sold their equity to Milton M. Bernstein and Rose Bernstein, his wife, on contract. The consideration was $11,400, of which $2,500 was paid down in cash. Out of the down payment Knuckles received a commission of $570 and $800 as a first payment on a farm which the plaintiffs were intending to buy. They had previously informed Knuckles that they expected to buy the Brown farm near Flint. Knuckles told them that he could save them some money,

so the $800 was turned over to him for the purpose of making the down payment. He was not able to buy the farm, but retained the $800 and interested them in the purchase of another farm, called the Steele farm. He told them he had bought the Steele farm in his own name, and could use their Bernstein contract. So at his request they assigned their equity in that contract to him. He gave them a receipt for $4,500 as a down payment on the Steele farm and his note for $3,102.30, which, plus the $800 he had previously received to pay on the Brown farm, was intended to represent the balance of their equity in the Bernstein contract. This was on October 29, 1926. He told them they could take possession of the farm on the following Monday. When they went to take possession, they learned that Knuckles had not bought the farm and could not buy it. Knuckles then tried to sell them another farm, but they refused to buy and demanded a reassignment of their contract. They then learned for the first time that it had been sold and assigned to the Bernsteins on November 2, 1926. Subsequently this suit was brought to set aside these two assignments on the ground of fraud. The court granted the relief prayed for, and the defendants Bernstein have appealed.

1. The first question discussed in the briefs is whether the assignment of the Bernstein contract to Knuckles was procured through fraud.

There is no doubt about it. In order to get the contract from the plaintiffs, Knuckles represented to them that he had bought the Steele farm in his own name, that he could give them possession in a few days, and that he could use their contract as part payment. These representations were false. They were made for the purpose of defrauding the plaintiffs. He had not bought the farm. He had

nothing to sell, and gave no consideration for the assignment. But he made them believe they were buying the farm, and gave them a receipt acknowledging a down payment of $4,500, and reciting the terms of sale. The whole transaction was fraudulent on his part. The mere statement of the facts, which are undisputed, conclusively shows that the assignment was procured through fraud.

2. Did the defendants Bernstein purchase the contract in good faith without knowledge of Knuckles' fraud?

It is not necessary to a decision in this case to discuss the testimony tending to show notice or want of notice on the part of the defendants. The question may be determined by application of the well-settled rule that an assignee of a land contract or other chose in action takes it subject to all equities and defenses existing while it is in the hands of the assignor. *Warner* v. *Whittaker,* 6 Mich. 132 (72 Am. Dec. 65); *Stephens* v. *Coryell,* 169 Mich. 48; *Clark* v. *Bussard,* 220 Mich. 304.

In *Warner* v. *Whittaker, supra,* it was said:

"It is not necessary that the equities should exist at the inception of the debt or contract. It is sufficient they exist prior to the assignment; for the reason of the rule is as applicable to one case as to the other; which is, that the assignee has it in his power to protect himself against them by inquiry of the debtor before the assignment. Chancellor Kent, in *Murray* v. *Sylburn,* 2 Johns. Ch. (N. Y.) 441, says: 'The assignee can always go to the debtor and ascertain what claims he may have against the bond, or other chose in action, which he is about purchasing from the obligee.' "

In the instant case, the defendants were purchasers of an equitable interest only. They succeeded to Knuckles' rights in the contract, and no more.

The plaintiffs are entitled to the same relief against the defendants as they had against Knuckles. This, of course, assumes that their equities existed while the contract was in his hands. Of that the evidence leaves no doubt.

Counsel for the defendants earnestly request our consideration of the holding of this court in *Kuczewski* v. *DeMagnussun*, 242 Mich. 296 (57 A. L. R. 756), which they claim to be on all fours with the case at bar. In that case the purchaser took more than an equitable interest. He took a deed. The rule applicable to an assignee of a land contract does not apply to one who takes the legal title.

The further contention is made that the plaintiffs are not entitled to relief because they have not tendered back what they received from Knuckles when he received the assignment. We think the trial court correctly disposed of this contention. We quote from his opinion:

"It is true they are still in possession of the receipt or contract which Knuckles gave them, under which they were supposed to become the owners of the Brown farm, and also Knuckles' note. Technically speaking, they should probably have returned these documents to Knuckles, but I do not believe their failure to do so bars this action. Knuckles defaulted his bail in a criminal action and his present whereabouts are unknown. The assignment of the Reid contract, which he mailed to plaintiffs, was returned by registered mail, but remains undelivered because his address is unknown. The defense of failure to make a tender of these papers, which are of no practical value, could only be offered by Knuckles, but, in order to prevent any question on that subject, the decree will provide that they be deposited with the clerk of the court and held subject to Knuckles' orders."

The decree of the circuit judge is affirmed in all respects, with costs to the plaintiffs.

WIEST, C. J., and BUTZEL, CLARK, POTTER, SHARPE, FEAD, and NORTH, JJ., concurred.